J-S40017-18

2018 PA Super 264

IN RE: H.R., A MINOR

APPEAL OF:  H.R., A MINOR

:   IN THE SUPERIOR COURT OF
:       PENNSYLVANIA
:
:
:
:
:
:
:
:
:
:   No. 199 EDA 2018

Appeal from the Order Entered January 4, 2018
in the Court of Common Pleas of Northampton County
Civil Division at No.:  C-48-CV-2017-10986

BEFORE:   LAZARUS, J., DUBOW, J., and PLATT*, J.

OPINION BY PLATT, J.:               **FILED SEPTEMBER 21, 2018**

Appellant, H.R., appeals from the trial court's January 4, 2018 order denying his motion to dismiss petition for involuntary treatment, granting the petition, and committing him for mental health treatment at Torrance State Hospital for a period of one year.  We affirm.

The trial court aptly set forth the background of this case, as follows:

[Appellant], the subject of the instant petition, was born on February 27, 1997.  On September 20, 2010, when he was thirteen [] years of age, [he] was adjudicated delinquent[a] for indecent assault of a complainant less than thirteen years of age. On disposition pursuant to 42 Pa.C.S.A. § 6352, [Appellant] was placed on official probation and ordered to undergo inpatient treatment at a sexual offender residential treatment facility.  He remains in a residential treatment placement to date.

> [a] The Juvenile Court system has jurisdiction over delinquent children until they are twenty-one [] years of age.  [*See*] 42 Pa.C.S.A. § 6302.

_____

*   Retired Senior Judge assigned to the Superior Court.

[Appellant] turned twenty [] years of age on February 27, 2017. Accordingly, he was assessed by the Sexual Offender's Assessment Board pursuant to 42 Pa.C.S.A. § 6358(a). Thereafter, the court conducted a dispositional review hearing in accordance with 42 Pa.C.S.A. § 6358(e), pursuant to which the court found that a *prima facie* case had been made establishing [Appellant]'s need for ongoing treatment at a sexual offender residential treatment facility.

On December 7, 2017, the Northampton County solicitor's designee filed a petition for involuntary treatment under 42 Pa.C.S.A. § 6403 ("Act 21"). [Appellant]'s appointed counsel responded to the petition with the filing of a motion to dismiss the same on December 12, 2017[.] . . . A hearing . . . commenced on Tuesday, December 19, 2017, and the record was closed on Tuesday, January 2, 2018. . . .

(Trial Court Opinion, 1/04/18, at 1-3) (record citations, unnecessary capitalization, and some footnotes omitted).

On January 4, 2018, the trial court denied Appellant's motion to dismiss, granted the Northampton County solicitor's petition for involuntary treatment, and involuntarily committed Appellant for one year of mental health treatment. Appellant filed a notice of appeal on January 8, 2018. On January 11, 2018, Appellant was placed on the Pennsylvania State Police's sex offender registry as a sexually violent delinquent child (SVDC). On January 22, 2018, Appellant filed a motion to be removed from the sex offender registry based on **Commonwealth v. Muniz**, 164 A.3d 1189 (Pa. 2017), *cert. denied*, 138 S. Ct. 925 (2018), and **Commonwealth v. Butler**, 173 A.3d 1212 (Pa. Super. 2017), which the trial court granted on February 5, 2018, removing him from

the registry.[1]  Appellant filed a timely concise statement of errors complained

of on appeal on February 9, 2018.  *See* Pa.R.A.P. 1925(b).  The court filed an

opinion on February 12, 2018, in which it relied on its January 4, 2018 opinion.

*See* Pa.R.A.P. 1925(a).

Appellant raises one question for this Court's review:  "Is Act 21

punitive, such that its retroactive application to [Appellant] and its mechanism

for determining whether an individual is a sexually violent delinquent child are

unconstitutional under [*Muniz*] and [*Butler*]?"  (Appellant's Brief, at 5).

Our standard of review of this matter is well-settled:

> A challenge to the constitutionality of a statute presents this Court with a question of law; thus, our scope of review is plenary. This review is guided by the following principles:
>
>> A statute will be found unconstitutional only if it clearly, palpably and plainly violates constitutional rights.  Under well-settled principles of law, there is a strong presumption that legislative enactments do not violate the constitution.  Further, there is a heavy burden of persuasion upon one who questions the constitutionality of an Act.
>
> We are mindful that, when interpreting a statute, courts must look to the statute itself and give plain meaning to the words contained therein.  *See* 1 Pa.C.S.A. § 1903.

*In re S.A.*, 925 A.2d 838, 841-42 (Pa. Super. 2007), *appeal denied*, 952 A.2d

678 (Pa. 2008) (case citations omitted).

Act 21 provides, in pertinent part:

---

[1] The trial court found that it retained jurisdiction to issue its order to preserve that *status quo* that existed on January 4, 2018.  *See* Pa.R.A.P. 1701(b)(1).

This chapter establishes rights and procedures for the civil commitment of sexually violent delinquent children, who, due to a mental abnormality or personality disorder, have serious difficulty in controlling sexually violent behavior and thereby pose a danger to the public and further provides for additional periods of commitment for involuntary treatment for said persons.

42 Pa.C.S.A. § 6401.

Upon a finding by clear and convincing evidence that the person has a mental abnormality or personality disorder which results in serious difficulty in controlling sexually violent behavior that makes the person likely to engage in an act of sexual violence, an order shall be entered directing the immediate commitment of the person for involuntary inpatient treatment to a facility designated by the department. . . .

42 Pa.C.S.A. § 6403(d).

Appellant first argues that Act 21 is punitive, and that, "therefore, the mechanism set forth in Act 21 for determining whether an individual should be subject to court-ordered involuntary treatment is unconstitutional[.]" (Appellant's Brief, at 14).  We disagree.

It is well-settled that:

[I]n ascertaining whether legislation should be deemed unconstitutionally punitive, it first must be determined whether the legislative intent was to punish.  If a determination is made that the intent was non-punitive, then the second level of inquiry is to evaluate the purpose and effect of the legislation to assess whether the statutory scheme is nonetheless either in purpose or effect as to negate the legislature's non-punitive intent.

This second step encompasses an analysis of the following factors:

(1) whether the sanction involves an affirmative disability or restraint; (2) whether it has historically been regarded as punishment; (3) whether it comes into play only on finding of scienter; (4) whether its

- 4 -

operation will promote the traditional aims of punishment—retribution and deterrence; (5) whether behavior to which it applies is already a crime; (6) whether an alternative purpose to which it may rationally be connected is assignable for it; and (7) whether it appears excessive in relation to an alternative purpose.

*In re S.A.*, *supra* at 843 (citations and quotation marks omitted); *see also*

*Kennedy v. Mendoza-Martinez*, 372 U.S. 144, 168-69 (1963) (setting forth

seven factors for determining if statute has punitive effect).

Here, the trial court aptly explained:

Under Act 21, the only consequence of a judicial determination that a young person has a mental abnormality or personality disorder that makes him or her likely to engage in predatory sexually violent offenses is court-ordered treatment. . . . [T]he purpose and function of Act 21 is to "set[] forth a comprehensive scheme for treating sexually violent juveniles before they 'age out' of the juvenile system" by way of a civil commitment process. *In re K.A.P.*, 916 A.2d 1152, 1156 (Pa. Super. 2007), *aff'd sub nom. In re K.A.P., Jr.*, 943 A.2d 262 (Pa. 2008).

*       *       *

As stated by [this Court] in *S.A.*, "the General Assembly's intent in promulgating Act 21 was not to punish sexually violent delinquent children, but rather, to establish civil commitment procedures designed to provide necessary treatment to such children and to protect the public from danger." *In re S.A.*, [*supra* at] 843 []. Further, although the civil procedure set forth in Act 21 leads to the designation of an individual as a[n] [SVDC], this designation arises not from a judicial finding, but merely from a legislative definition, and . . . Act 21 does not provide for any punitive ramifications arising from such designation.

(Trial Ct. Op., at 11).

In **S.A.**, having determined that Act 21 was not punitive in intent, this Court exhaustively analyzed the seven **Mendoza-Martinez** factors and concluded that they weighed in favor of a finding that Act 21 is not punitive in effect. **See In re S.A.**, **supra**, at 843. Based on the foregoing, we held that, because "Act 21 has a non-punitive purpose and a non-punitive effect[,] . . . it does not constitute punishment." **Id.** at 845. Hence, because Act 21 is not penal, the clear and convincing standard for determining whether a juvenile is an SVDC is constitutional. **See id.** at 841-42; **see also In re A.C.**, 991 A.2d 884, 893 (Pa. Super. 2010). Appellant's argument does not merit relief.

Moreover, neither **Muniz** nor **Butler** changes our disposition. Both cases considered the Sex Offender Registration and Notification Act (SORNA), not Act 21. In **Muniz**, the Pennsylvania Supreme Court held that the retroactive application of SORNA's registration scheme to sexual offenders who committed their crimes before the SORNA's effective date violates Pennsylvania's *ex post facto* clause because SORNA is punitive in effect pursuant to the **Mendoza-Martinez** factors where it provides for further punishment. **See Muniz**, **supra** at 1218.

However, as stated previously, in **In re S.A.**, this Court considered Act 21 in light of the same factors, and concluded that **Act 21** is **not punitive** in effect. **See In re S.A.**, **supra** at 844-45. Therefore, **Muniz**, which found that the *ex post facto* application of SORNA (a punitive statute) was

prohibited, is distinguishable from this case that involves Act 21 (a non-punitive statute). Hence, Appellant's reliance on **Muniz** affords him no relief.

Also, Appellant's reliance on **Butler** is similarly misplaced because it again requires reliance on a presumption that the statute under review is punitive. As observed by the trial court:

> In **Butler**, [this] Court held that "a factual finding, such as whether a defendant has a 'mental abnormality or personality disorder that makes him or her likely to engage in predatory sexually violent offenses[,]' . . . **that increases the length of registration** [under SORNA] must be found beyond a reasonable doubt by the chosen fact-finder." [**Butler**, **supra** at 1217]. However, this ruling was not predicated on the SVP designation itself, but the punitive consequences arising under SORNA pursuant to the designation. Thus, while [Appellant] urges that **Butler**'s preclusion also applies to Act 21, a careful reading of the decision leads to the opposite conclusion.
>
> Under Act 21, the only consequence of a judicial determination that a young person has a mental abnormality or personality disorder that makes him or her likely to engage in predatory sexually violent offenses is court-ordered treatment. . . .
>
> By contrast, SORNA imposes increased criminal penalties[.] . . .

(Trial Ct. Op., at 10-11) (emphasis in original).

Again, we agree with the sound reasoning of the trial court. **Butler** was decided based on the punitive effect of SORNA. Because Act 21 is not penal in intent or effect, **Butler** does not apply to render Act 21's clear and convincing standard unconstitutional. **See In re S.A.**, **supra** at 841-42. Therefore, Appellant's claim that Act 21 is unconstitutional based on **Butler** lacks merit.

Appellant next argues that the 2011 amendments to Act 21 are punitive because they extend an individual's treatment for one year, and that, because the provisions were added after he was adjudicated delinquent, their retroactive application to him violates the *ex post facto* clause of the United States and Pennsylvania Constitutions. (***See*** Appellant's Brief, at 36). We disagree.

We note that "[t]he *Ex Post Facto* Clause speaks only to retroactive punishment. Thus, the issue becomes whether the civil disability imposed on appellant . . . constitutes punishment." ***Lehman v. Pennsylvania State Police***, 839 A.2d 265, 270 (Pa. 2003) (citation omitted). The amendments to Act 21 provide, in pertinent part:

> If at any time the director or a designee of the facility to which the person was committed concludes the person no longer has serious difficulty in controlling sexually violent behavior in an inpatient setting, the director shall petition the court for a hearing [for consideration of an out-patient treatment plan]. . . .

42 Pa.C.S.A. § 6404(c)(1). At the hearing, "[t]he court may approve or disapprove an outpatient treatment plan." 42 Pa.C.S.A. § 6404.1. "If a court has ordered the transfer of the person to involuntary outpatient treatment pursuant to section 6404.1 [], the court may, in its discretion, specify the terms and conditions of the outpatient commitment[.]" 42 Pa.C.S.A. § 6404.2(a).

Instantly, the trial court observed:

- 8 -

[T]hese amendments merely require another level of treatment [and] they remain geared toward improving the individual's mental condition and not toward retribution. . . .

Time and again, the Courts have concluded that where, as here, the imposition of a civil disability, restraint, or requirement is for some other purpose, such disability, restraint, or requirement is not punitive. **See Lehman**, **supra** at 270 (Law prohibiting individual from possessing firearm based on his conviction for an offense that occurred prior to the enactment of the law was not punitive and did not violate *ex post facto* protections); **In re J.Y.**, 754 A.2d 5, 11 (Pa. Super. 2000), *appeal denied sub nom.* **J.Y. v. C.L.Y.**, 764 A.2d 1070 (Pa. 2000) (Noting that "[t]he purpose underlying [juvenile dependency] proceedings is not punishment of the parents or restrictions of their liberty. Rather the purpose is to determine the best possible plan for the children[,]" and holding that a court may approve a family service plan directing a parent to take GED classes or participate in mental health treatment, and consider the parent's failure to comply in making dependency decisions.).

Here, §[]6404.2 enables the [c]ourt, but does not require it to "specify the terms and conditions" of an outpatient commitment under Act 21, it imposes a monthly counseling requirement equal to the length of an individual's SORNA registration, and it mandates that the [c]ourt shall return the individual to inpatient treatment without a hearing upon notification that the individual has violated his treatment plan, or that he "is having serious difficulty controlling sexually violent behavior in an outpatient setting due to a mental abnormality or personality disorder that makes the person likely to engage in an act of violence."  42 Pa.C.S.A. § 6404.2(a), (d), (e).  While these provisions impose requirements and limits on an individual's liberty, they exist for ensuring that the individual receives the treatment and support necessary to effectuate the improvement of his mental health.

(Trial Ct. Op., at 16-17) (one case citation and emphasis omitted; some citation formatting provided).

We agree with the foregoing analysis.  The purpose of Act 21 is to provide for the treatment of individuals who "have serious difficulty in

controlling sexually violent behavior and thereby pose a danger to the public."

42 Pa.C.S.A. § 6401.  The out-patient provisions merely aid the court in ensuring that a juvenile receives such treatment, with certain requirements necessary to achieve that goal.  Therefore, they do not render Act 21 punitive, and their retroactive application does not violate the *ex post facto* clause of the Pennsylvania and United States Constitutions, because they are not punishment.  **See Lehman**, **supra** at 270; **In re S.A.**, **supra** at 841-42.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 9/21/18