J-S28012-19

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| IN THE INTEREST OF: W.T.H., A MINOR | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| Appellant | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 1477 MDA 2018 |

Appeal from the Order Entered August 24, 2018
In the Court of Common Pleas of Huntingdon County Juvenile Division at
No(s):  CP-31-JV-0000068-2011

BEFORE:   BOWES, J., McLAUGHLIN, J., and STRASSBURGER*, J.

MEMORANDUM BY BOWES, J.:                    **FILED JULY 23, 2020**

W.T.H. appeals from the order that granted the Commonwealth's request for involuntary commitment under the Court-Ordered Involuntary Treatment of Certain Sexually Violent Persons statute ("Act 21").[1]  Upon careful review, we affirm.

A previous panel of this court provided an apt summary of the facts:

> . . . . In early June 2011, N.S., the victim, then six years-old, was watching TV with his grandmother, uncle, and mother.  While

---

[1] Act 21 directs a juvenile court to order involuntary inpatient treatment for a sexually violent delinquent child ("SVDC") if it finds, "by clear and convincing evidence[,] that the person has a mental abnormality or personality disorder which results in serious difficulty in controlling sexually violent behavior that makes the person likely to engage in an act of sexual violence."  42 Pa.C.S. § 6403(d).  Once entered, the order is reviewed annually and may extend indefinitely, as long as the person continues to meet the criteria for involuntary inpatient treatment.  *See* 42 Pa.C.S. § 6404.  Upon release from involuntary inpatient treatment, the individual must successfully complete one year of involuntary outpatient treatment in order to comply with Act 21's treatment requirements.  *See* 42 Pa.C.S. §§ 6404.1, 6404.2.

---

*   Retired Senior Judge assigned to the Superior Court.

watching TV, N.S. told his mother "out of the blue" that Appellant had put his lips on N.S.'s "dinger," which he was taught to call his penis. N.S.'s mother immediately drove to the home of Appellant's aunt, where N.S.'s mother believed the incident occurred, because earlier in the week N.S.'s mother, her mother, and Appellant's aunt had gone to bingo, leaving N.S. at Appellant's aunt's house to be babysat by Appellant's sister. N.S.'s mother told Appellant's aunt, father[,] and stepmother what N.S. had told her.

N.S.'s mother later asked N.S. where the incident had happened, and he told her it had happened at Appellant's aunt's house while he and Appellant were looking for N.S.'s lost video game. N.S.'s mother did not contact the Pennsylvania State Police or Children and Youth Services because she was close friends with Appellant's family and just wanted them to get Appellant help. Approximately one month later, the state police contacted N.S.'s mother about the incident; N.S.'s mother did not know who had reported the incident. N.S.'s mother also did not allow the police to interview N.S. because he had not mentioned the incident again and because he is autistic, diagnosed ADHD, receives treatment and takes medication. N.S.'s mother did not want to jeopardize his progress by involving him in a criminal prosecution.

On September 28, 2011, Trooper Fred Chadwick of the state police interviewed Appellant about the incident in the presence of his biological mother at the Huntington state police barracks. Appellant was thirteen years-old at the time of the incident and admitted the sexual contact with N.S. Appellant said he and N.S. were looking for a lost video game at Appellant's aunt's house when Appellant asked N.S. to expose his crotch, which he did. Appellant asked N.S. if Appellant could put his mouth on N.S.'s penis, and N.S. said yes. Appellant then put his mouth on N.S.'s penis for approximately five seconds. Appellant asked N.S. to put his mouth on Appellant's penis, which N.S. did for approximately five seconds.

*In the Interest of W.T.H., a minor*, 102 A.3d 546 (Pa.Super. 2014)

(unpublished memorandum).

On December 9, 2011, the Commonwealth filed a juvenile petition alleging that Appellant committed acts that would constitute involuntary

deviate sexual intercourse ("IDSI") with a child less than thirteen years of age and giving false reports if committed by an adult. After a hearing, the juvenile court held that N.S. was unavailable to testify under the "tender years exception" to the hearsay rule. Order, 6/28/13; *see also* N.T. Hearing, 5/20/13, at 1. Appellant proceeded to an adjudication hearing, wherein N.S.'s mother testified in place of N.S. *See* N.T. Adjudication Hearing, 6/28/13, 8-18. Appellant testified on his own behalf, recanting his previous statement. *Id*. at 27-33. Instead, he alleged that he had observed another boy committing the acts with N.S. *Id*. At the end of the hearing, the juvenile court adjudicated Appellant delinquent at both charges. *Id*. at 33. On July 23, 2013, Appellant was committed to supervision at Adelphoi Villages secure sex offender program, and later, Cove Prep adolescent residential treatment facility. On appeal, Appellant challenged the admissibility of the testimony of the mother of N.S. and the sufficiency of the evidence. We affirmed Appellant's adjudications. *See In the Interest of W.T.H., a minor*, *supra*.

On May 9, 2018, the juvenile court held a preliminary Act 21 hearing, since Appellant had reached the age of twenty and remained committed to Cove Prep. At the hearing, the Commonwealth presented the testimony of Robert Stein, Ph.D, the licensed psychologist who conducted Appellant's sexual offender assessment and who opined that Appellant met the criteria for civil commitment under Act 21. N.T. Preliminary Act 21 Hearing, 5/9/18, at 1-2, 8, 11-12. As Appellant refused to submit to an interview with Dr. Stein, the assessment was based upon Dr. Stein's review of existing mental

health reports.  Specifically, Dr. Stein explained that Appellant has pedophilic disorder and opposition defiant disorder which, when combined, qualify as a mental abnormality under Act 21.  *Id*. at 11.  Appellant testified, disagreeing with Dr. Stein and asking to be released on probation so that he would have the opportunity to prove himself.  *Id*. at 18-20.  Finally, Appellant's mother made a brief statement, wherein she agreed with Dr. Stein's assessment that Appellant was not ready to come home.  *Id*. at 21-23.  Following the hearing, the juvenile court found that the Commonwealth presented *prima facie* evidence that Appellant was in need of involuntary treatment under Act 21, and directed the Commonwealth to file a petition to initiate Act 21 proceedings.

On May 21, 2018, the Commonwealth filed the petition.  At that ensuing hearing, the Commonwealth relied on the record made at the preliminary Act 21 hearing.  N.T Act 21 Hearing, 8/10/18, at 5.  Appellant reiterated his previous testimony, again explaining why he did not feel he was in need of further inpatient treatment, before presenting the court with a copy of his relapse prevention plan.  *Id*. at 2-5.  Appellant also complained that he did not believe he had received competent counsel.  *Id*.  In response, the Commonwealth noted that representatives of Cove Prep were present and available for questioning, and recalled Dr. Stein so that Appellant could question him directly.  *Id*. at 4-5.  At the conclusion of Dr. Stein's testimony, the court entered an order finding, by clear and convincing evidence, that Appellant had a mental abnormality or permanent disorder which made him

likely to engage in an act of sexual violence. *Id*. at 7. Accordingly, the court committed Appellant to one year of involuntary sexual offender treatment pursuant to Act 21.

New counsel was appointed, and Appellant filed a timely notice of appeal.[2] He complied with the trial court's order to file a Pa.R.A.P. 1925(b) concise statement of errors complained of on appeal, and on October 17, 2018, the trial court filed its Pa.R.A.P. 1925(a) opinion.

Appellant raises the following issues which we have reordered for ease of disposition:

1. Whether 42 Pa.C.S. § 6401, *et. seq.* ("Act 21") including and especially 42 Pa.C.S. § 6403 constitutes punishment as

---

[2] On September 5, 2019, while this appeal was pending, the juvenile court conducted Appellant's first Act 21 review hearing in this case and combined that hearing with a separate sexual adjudication that had been committed while Appellant had been in placement for this case. At the conclusion of the hearing, the court continued Appellant's Act 21 placement for an additional year at both docket numbers. Appellant filed separate notices of appeal challenging the validity of his SVDC status and the constitutionality of Act 21. On May 22, 2020 a separate panel of this court consolidated Appellant's appeals challenging the continuation of his involuntary commitment and affirmed the order. *In the Interest of W.T.H., a minor*, 1560 MDA 2019, 1561 MDA 2019, 2020 WL 2617040 (Pa.Super. 2020) (unpublished memorandum). In doing so, our court explained that Act 21's mechanism of adjudicating SVDC by clear and convincing evidence remains constitutionally sound. *Id*.

determined by a *Muniz-Butler*[3] analysis, and if so, whether the "Act 21" statute is unconstitutional because its implementation relies upon an incorrect burden of proof: namely, "clear and convincing evidence"?

2. Whether the evidence was insufficient to support the finding that Appellant should be subject to involuntary treatment under the criteria of 42 Pa.C.S. § 6403(a) in that the Commonwealth failed to establish that he was in need of treatment due to a mental abnormality or disorder which results in his serious difficulty in controlling sexually violent behavior that makes him likely to engage in an act of sexual violence.

*See* Appellant's brief at 4; Appellant's supplemental brief at 2.

In his first issue, Appellant alleges that Act 21 is punitive. *See* Appellant's supplemental brief at 5. Therefore, the determination whether someone should be involuntarily committed to inpatient treatment upon a clear and convincing evidentiary standard is unconstitutional. *Id*. at 6. "[W]e recognize there is a general presumption that all lawfully enacted statutes are constitutional. In addition, as this case presents a question of law, our scope

_____

[3] *Commonwealth v. Muniz*, 164 A.3d 1189 (Pa. 2017) (holding that the registration requirements of Pennsylvania's Sex Offender Registration and Notification Act ("SORNA") constitute criminal punishment, such that their retroactive application violates the *ex post facto* clauses of the United States and Pennsylvania Constitutions); *Commonwealth v. Butler*, 173 A.3d 1212, 1217-18 (Pa.Super. 2017) ("*Butler I*") (Applying *Muniz* to the Sexually Violent Predator ("SVP") assessments and finding that because the SORNA registration requirements are punitive, a factual finding, such as whether a defendant has a mental abnormality that makes him likely to engage in predatory sexually violent offenses, must be found beyond a reasonable doubt.).

of review is plenary and we review the lower courts' legal determinations *de novo*." **Commonwealth v. Muniz**, 164 A.3d 1189, 1195 (Pa. 2017).

After Appellant filed his appellate brief, our Supreme Court and an *en banc* panel of this Court issued three decisions that are directly on point and conflict with Appellant's position. First, in **Commonwealth v. Butler**, 226 A.3d 972 (Pa. 2020) ("**Butler II**"), our Supreme Court reversed **Butler I**, a case upon which Appellant relies to support his position. **See** Appellant's supplemental brief at 19.[4] In overruling **Butler I**, our Supreme Court engaged in a detailed balancing of the **Mendoza-Martinez**[5] factors. **Id**. at 988-993. This analysis led it to conclude that the registration, notification, and counseling requirements imposed upon sexually violent predators ("SVPs") were not punitive under the Sexual Offender Registration and Notification Act ("SORNA"). **Id**. at 992-93. Because these additional requirements placed on

---

[4] As explained previously, in **Butler I** we held that the registration, notification, and counseling requirements imposed upon SVPs under SORNA amounted to punishment, such that SVP determinations must be found beyond a reasonable doubt. **Butler I**, **supra** at 1216-17.

[5] The **Mendoza-Martinez** factors are as follows: whether the statute involves an affirmative disability or restraint; (2) whether the sanction has been historically regarded as punishment; (3) whether the statute comes into play only on a finding of scienter; (4) whether the operation of the statute promotes the traditional aims of punishment; (5) whether the behavior to which the statute applies is already a crime; (6) whether there is an alternative purpose to which the statute may be rationally connected; and (7) whether the statute is excessive in relation to the alternative purpose assigned. **See Muniz**, **supra** at 1210-1217; **see also Kennedy v. Mendoza-Martinez**, 372 U.S. 144 (1963).

SVPs were not punitive, SORNA's requirement that the trial court determine whether an offender is an SVP by a preponderance of the evidence remained constitutionally sound.[6] *Id*. at 993.

Next, our Supreme Court issued *In re H.R.*, 227 A.3d 316 (Pa. 2020) ("*H.R. II*"), which affirmed our decision that the Act 21 mechanism for determining whether an individual is a SVDC did not constitute criminal punishment. *See In re H.R.*, 196 A.3d 1059 (Pa. Super. 2018) ("*H.R. I*"). After acknowledging the limited precedential value of *Muniz*, due to the heightened safety concerns and the irrelevance of the SORNA Subchapter H requirements in the SVDC context, the *H.R. II* court nonetheless applied the analytic structure of the *Butler II* court. *H.R. II*, *supra* at 330-31. Accordingly, the Court applied the *Mendoza-Martinez* factors to Act 21 in order to determine if it was punitive in intent or effect. *Id*. at 331-35. Ultimately, the Court found that only the first factor weighed in favor of deeming Act 21 punitive. *Id*. All other factors balanced in favor of finding

_____

[6] On February 21, 2018, following *Muniz* and *Butler I*, the Pennsylvania General Assembly amended SORNA. *See* Act of Feb. 21, 2018, P.L. 27, No. 10 (HB 631 of 2017; "Act 10"). Thereafter, the Governor of Pennsylvania signed new legislation striking the Act 10 amendments and reenacting several SORNA provisions. *See* Act of June 12, 2018, P.L. 140, No. 29 (HB 1952 of 2018; "Act 29"); *see also* 42 Pa.C.S. § 9799.51(b)(4) (explaining that the legislature amended SORNA in order to comply with *Muniz* and *Butler I*). Therefore, the *Butler II* Court reviewed the amended version of SORNA. *See Butler II*, *supra* at 981 n.11.

the statute non-punitive. *Id*. The High Court explained the reasoning behind its decision as follows:

> Despite the fact that Act 21 imposes obvious affirmative disabilities or restraints upon SVDCs, our review of the remaining *Mendoza-Martinez* factors leads to the conclusion [that] the statutory scheme is not punitive in intent or effect. Act 21 provides treatment to SVDCs rather than imposing restrictions that were historically considered punishment, and does not promote the typically punitive goals of deterrence and retribution. Furthermore, Act 21 protects the public from SVDCs, who have never been convicted of a crime, but are subject to the statutory restrictions because they are dangerously mentally ill. Lastly, Act 21, including the 2011 amendments, cannot be said to be excessive in light of the danger posed to the public by SVDCs. Based on all of the above, we conclude that Act 21 does not constitute criminal punishment.

*Id*. at 335. Next, the Court reasoned that because the challenged provisions of Act 21 do not constitute criminal punishment, Appellant's due process claim surrounding the burden of proof employed at SVDC hearings failed. *Id*. Thus, the statute's application of a clear and convincing evidentiary standard for imposing its requirements passes constitutional muster.

An *en banc* panel subsequently applied the holding of *H.R. II*. *See In re J.C.* ___ A.3d ___, 1391 WDA 2017, 2020 WL 2463048 (Pa.Super. 2020) (*en banc*). In doing so, we relied upon the analysis of *H.R. II*, that the requirements of Act 21 are not punishment, and that the mechanism of adjudicating SVDCs by a clear and convincing evidence standard does not run afoul of the constitution. *Id*.

Here, as in *H.R. II* and *In re J.C.*, Appellant challenges the validity of his SVDC status on the constitutional grounds that Act 21's requirements

constitute punishment necessitating that all relevant factual findings are made beyond a reasonable doubt. *See* Appellant's supplemental brief 21. In light of the foregoing precedent, we disagree. Our Supreme Court has spoken on this issue and its holding is inapposite to Appellant's position. Appellant has not offered any additional analysis to persuade us otherwise. Therefore, Appellant's constitutional challenges to Act 21 are meritless. As our Supreme Court previously explained in *H.R. II*, Act 21 is not punitive. Therefore, application of the statute does not violate Appellant's constitutional protections.

Appellant's second issue asserts that the evidence was insufficient to support the trial court's order to involuntarily commit him to inpatient treatment. *See* Appellant's brief at 13. Our review is guided by the following precedent:

> We have explained that, at the [Act 21] hearing, it is the Commonwealth that bears the burden of showing by clear and convincing evidence that the person has a mental abnormality or personality disorder which results in serious difficulty in controlling sexually violent behavior that makes the person likely to engage in an act of sexual violence. If the Commonwealth meets this burden, the court is to enter an order committing the person to inpatient treatment for a period of one year. Our Supreme Court has defined clear and convincing evidence as testimony that is so clear, direct, weighty, and convincing as to enable the trier of fact to come to a clear conviction, without hesitation, of the truth of the precise facts in issue. Thus, the clear and convincing evidence test has been described as an intermediate test, which is more exacting than a preponderance of the evidence test, but less exacting than proof beyond a reasonable doubt. Moreover, in conducting a sufficiency review, we must consider the evidence in the light most favorable to the Commonwealth which prevailed upon the issue at trial. With regard to sexually violent predator

- 10 -

assessments, the task of the Superior Court is one of review, and not of weighing and assessing evidence in the first instance.

*In re S.T.S., Jr.*, 76 A.3d 24, 38-39 (Pa.Super. 2013) (citations and quotations omitted).

The juvenile court summarized the relevant evidence as follows:

> Robert M. Stein, Ph.D. was accepted as an expert at the May 9, 2018 hearing. Dr. Stein has been a licensed psychologist since 1990.
>
> He testified that [Appellant] meets the criteria for civil commitment under Act 21. He said that the factors that caused him to reach his conclusion were as follows:
>
> First, he considered the fact that Appellant was adjudicated delinquent for an act of sexual violence perpetrated on a young boy.
>
> Next, he said, he examined all records generated since Appellant's commitment including evaluations and assessments. The records, he said, indicated [Appellant] had been diagnosed with Pedophilic Disorder as well as Oppositional Defiant Disorder. In addition, he said, there is evidence in the record suggesting autism. He then testified that "[w]hen we look at the combination of the deviant sexual interest by itself it would provide evidence of a condition that meets the mental abnormality criteria but when we add the oppositional defiant behavior, I think that supports the issue of mental abnormality relevant for Act 21." (N.T. at p.8)
>
> The final factor Dr. Stein said contributed to his conclusion was [Appellant's] placement behaviors. In this regard he testified [Appellant] was unable to successfully complete the Adelphoi Village's secure sex offender program as a consequence of which he was moved to Cove Prep. At Cove Prep [Appellant] has consistently violated the rules and, in fact, has propositioned thirteen peers or twenty percent of the population.
>
> Dr. Stein was unequivocal that [Appellant] needs to continue in a secure sex offender treatment program, and that was his recommendation.

No expert testimony was presented by Appellant who did however testify and express his desire to go home. Sadly, his [m]other did not concur in her son's assessment of his condition.

Trial Court Opinion, 10/17/18, at 2-3. Based on the summary of the evidence, which was supported by the record, the juvenile court concluded that the evidence was sufficient to justify the entry of the order of commitment. *Id*. at 3. We agree.

In challenging the court's determination, Appellant avers that the court should not have placed so much weight on Dr. Stein's opinion because he had stale information generated by others, since he did not interview Appellant directly. *See* Appellant's brief at 17-18. We find Appellant's argument unconvincing, since it suggests an absurd result. Dr. Stein's failure to examine Appellant was the direct result of Appellant's refusal to submit to an interview after Appellant "exercised his right not to participate." N.T. Preliminary Act 21 Hearing, 5/9/18, at 7. Dr. Stein explained that refusals are commonplace in these types of cases and that, as a result, these types of assessments are frequently and effectively conducted by reviewing the case file. *Id*. Ruling in favor of Appellant on these grounds would effectively sanction the evasion of Act 21 consequences by refusing to participate in a sex offender assessment board ("SOAB") assessment. This we cannot do. Accordingly, Appellant's argument fails.

Viewing the evidence in the light most favorable to the Commonwealth, the Commonwealth sufficiently established that Appellant has a mental

abnormality or personality disorder that causes him serious difficulty controlling sexually violent behavior, such that involuntary civil commitment is necessary. Dr. Stein opined that Appellant has pedophilic and oppositional defiant disorders, based on the many years of documents he reviewed detailing Appellant's progress. N.T. Preliminary Act 21 Hearing, 5/9/18 at 7-8. Since 2013, Appellant has consistently failed to comply with the rules or make progress in his treatment programs. *Id*. at 8. Dr. Stein explained that Appellant's stagnant progress indicates either an inability or unwillingness to manage sexual urges, which placed him at a high risk of committing "sexual offending behavior" if exposed to an unstructured setting. *Id*. at 12. Dr. Stein's testimony was supported by Appellant's own mother, who testified that while Appellant had made "some progress," he is a manipulator who is still in need of inpatient treatment. *Id*. at 20-23.

Even though Appellant has been housed in a secure facility since 2013, he continues to utilize sexual arousal as a coping strategy and still experiences sexual urges coupled with a lack of control. *Id*. at 9-10. In 2017, there was an incident where Appellant touched another boy's penis over his clothes. Also, since arriving at Cove Prep, Appellant has propositioned twenty percent of the population. *Id*. at 10. Based on this record, we conclude that the evidence was sufficient to establish the elements necessary to involuntarily commit Appellant under Act 21.

Order affirmed.

Judge McLaughlin joins the memorandum.

Judge Strassburger concurs in the result.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 07/23/2020