J-S48004-19

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

IN RE: H.R.                        :     IN THE SUPERIOR COURT OF
                                     :           PENNSYLVANIA
                                     :

APPEAL OF: H.R.              : 
                                     :
                                     :
                                     :
                                     :
                                     :
                                     :     No. 221 EDA 2019

Appeal from the Order Entered January 8, 2019
In the Court of Common Pleas of Northampton County Civil Division at
No(s):  CP-48-CV-2017-10986

BEFORE:   BOWES, J., SHOGAN, J., and STRASSBURGER, J.[*]

MEMORANDUM BY BOWES, J.:               **FILED JULY 24, 2020**

H.R. appeals from the order that granted a one-year extension of the Northampton County Office of the Solicitor's request for involuntary commitment under the Court-Ordered Involuntary Treatment of Certain Sexually Violent Persons statute ("Act 21").[1]  We affirm.

_____

[*] Retired Senior Judge assigned to the Superior Court.

[1] Act 21 directs a juvenile court to order involuntary inpatient treatment for a sexually violent delinquent child ("SVDC") if it finds, "by clear and convincing evidence[,] that the person has a mental abnormality or personality disorder which results in serious difficulty in controlling sexually violent behavior that makes the person likely to engage in an act of sexual violence."  42 Pa.C.S. § 6403(d).  Once entered, the order is reviewed annually and may extend indefinitely, as long as the person continues to meet the criteria for involuntary inpatient treatment.  *See* 42 Pa.C.S. § 6404.  Upon release from involuntary inpatient treatment, the individual must successfully complete one year of involuntary outpatient treatment in order to comply with Act 21's treatment requirements.  *See* 42 Pa.C.S. §§ 6404.1, 6404.2.

On September 20, 2010, a juvenile court adjudicated then-thirteen-year-old Appellant delinquent for committing acts that would constitute an indecent assault of a complainant less than thirteen years of age if committed by an adult. The court imposed juvenile probation and ordered Appellant to undergo inpatient treatment at a sex offender residential treatment facility.

Appellant remained in treatment and, when he turned twenty, was assessed by the Sexual Offender Assessment Board ("SOAB" or "Board") to determine whether involuntary residential treatment was still necessary. The Board provided its assessment to the juvenile court, which then held a preliminary Act 21 hearing. At the conclusion of the hearing, the court found that a *prima facie* case had been presented, establishing the need for ongoing inpatient treatment. On December 7, 2017, the Northampton County Solicitor's designee filed a petition for involuntary treatment and Appellant's counsel filed a motion to dismiss.

Following the December 19, 2017 Act 21 hearing, the court denied the motion to dismiss and granted the petition for involuntary treatment, determining that Appellant met the requirements for a SVDC. As a result, the court committed Appellant to one year of mental health treatment at Torrance State Hospital. On January 8, 2018, Appellant filed an appeal to this Court, challenging the constitutionality of the procedure, in general and as applied to him, for determining whether an individual is an SVDC. In a unanimous opinion, we affirmed the lower court's order, explaining that the relevant

provisions of Act 21 were not punitive in either intent or effect. *In re H.R.*, 196 A.3d 1059, 1063-65 (Pa.Super. 2018) ("*H.R. I*").

Appellant filed a petition for allowance of appeal in the Supreme Court, which granted review of the following question: "Is Act 21 punitive, such that its retroactive application to [Appellant] and its mechanism for determining whether an individual is a[n SVDC] are unconstitutional under [*Muniz*[2] and *Butler I*]?"[3]

While the appeal was pending in our Supreme Court, Stacie Barnes, Psy.D., the clinical director of the Pennsylvania sexual responsibility and treatment program at Torrance, interviewed Appellant on October 11, 2018 and October 12, 2018 in order to prepare a ten-month comprehensive facility

---

[2] *Commonwealth v. Muniz*, 164 A.3d 1189 (Pa. 2017) (holding that the registration requirements of Pennsylvania's Sex Offender Registration and Notification Act ("SORNA") constitute criminal punishment, such that their retroactive application violates the *ex post facto* clauses of the United States and Pennsylvania Constitutions); *Commonwealth v. Butler*, 173 A.3d 1212, 1217-18 (Pa.Super. 2017) ("*Butler I*") (applying *Muniz* to the Sexually Violent Predator ("SVP") assessments and finding that because the SORNA registration requirements are punitive, a factual finding, such as whether a defendant has a mental abnormality that makes him likely to engage in predatory sexually violent offenses, must be found beyond a reasonable doubt).

[3] On April 1, 2020, our Supreme Court issued its decision affirming our Court's decision in *H.R. I*. *See In re H.R.*, 227 A.3d 316, 324 (Pa. 2020) ("*H.R. II*"). In doing so, our court held that Act 21 does not constitute criminal punishment and that Act 21's mechanism of adjudicating SVDC by clear and convincing evidence remains constitutionally sound. *Id*. at 335. We discuss the holding in *H.R. II* in more detail in the body of this memorandum.

review of Appellant's progress, pursuant to 42 Pa.C.S. 6404(b)(1).[4] Dr. Barnes submitted her report to the court on October 19, 2018. On October 24, 2018, SOAB board member Veronique Valliere, Psy.D. filed her Act 21 sexual offender assessment of Appellant. Both reports were presented to the court and a review hearing was scheduled to determine whether Appellant would need to be recommitted for an additional one-year term of involuntary treatment. On December 11, 2018, Appellant filed a *habeas corpus* petition based upon this Court's ephemeral holding in **In re J.C.**, 1391 WDA 2017 (Pa.Super. 2017) (withdrawn on February 15, 2019).

On December 12, 2018, the juvenile court held an Act 21 review hearing. The county presented the testimony of Dr. Valliere, who opined that Appellant met the criteria for civil commitment under Act 21 because he struggles to control his sexually violent behavior due to his diagnoses for exhibitionistic disorder, frotteuristic disorder,[5] and antisocial personality disorder. N.T. Act 21 Review Hearing, 12/12/18 at 4, 15-16. Dr. Valliere did not interview Appellant, so her assessment was based upon her review of Dr. Barnes's ten-month § 6404(b)(1) facility report, Appellant's treatment records

---

[4] "Sixty days prior to the expiration of the one-year commitment period, the director of the facility or a designee shall submit an evaluation and the board shall submit an assessment of the person to the court." 42 Pa.C.S. § 6404(b)(1).

[5] Frotteuristic disorder involves "the act of touching or rubbing one's genitals up against another person in a sexual manner without their consent, in order to derive sexual pleasure or reach orgasm." https://www.psychologytoday.com/us/conditions/frotteuristic-disorder

for the last year, and the November 2018 assessment. *Id*. at 6, 42. Appellant testified on his own behalf, explaining that he had shown growth by graduating from level 2.1. to 2.2 of the treatment program.

At the conclusion of the hearing, the court requested that the parties submit briefs addressing Appellant's *habeas corpus* petition and whether Appellant should be committed for an additional one-year term of involuntary treatment. Both sides submitted briefs, and on January 8, 2019, the juvenile court issued an order and opinion denying Appellant's motion for immediate release without prejudice and finding that Appellant was in need of an additional year of involuntary treatment under Act 21.

Appellant filed a timely notice of appeal. He complied with the trial court's order to file a Pa.R.A.P. 1925(b) concise statement of errors complained of on appeal, and the trial court relied on its opinion of January 8, 2019 as its Pa.R.A.P. 1925(a) opinion.

Appellant raises the following issues:

1. Is Act 21 punitive, such that its retroactive application to [Appellant] and its mechanism for determining whether an individual is a sexually violent delinquent child are unconstitutional under [***Muniz***] and [***Butler I***]?

2. Did the trial court abuse its discretion in finding that the county met its burden of proof, by clear and convincing evidence, that H.R. has [serious] difficulty controlling sexually violent behavior so as to justify an additional year of involuntary inpatient treatment?

3. Did the trial court abuse its discretion by relying on the 2018 SOAB assessment despite the fact that it was generated in an unethical manner?

- 5 -

    4.       Did the trial court abuse its discretion by relying on the facility evaluation despite the fact that its author was not present to testify?

*See* Appellant's brief at 4.

In his first issue, Appellant alleges that Act 21 is punitive. *See* Appellant's brief at 15. Therefore, he contends, the determination whether someone should be involuntarily committed to inpatient treatment upon a clear and convincing evidentiary standard is unconstitutional. *Id*. In considering Appellant's position, "we recognize there is a general presumption that all lawfully enacted statutes are constitutional. In addition, as this case presents a question of law, our scope of review is plenary and we review the lower courts' legal determinations *de novo*." *Muniz*, *supra* at 1195.

After Appellant filed his appellate brief, our Supreme Court issued two decisions that are directly on point and conflict with Appellant's position. First, in *Commonwealth v. Butler*, 226 A.3d 972 (Pa. 2020) ("*Butler II*"), our Supreme Court reversed *Butler I*, a case upon which Appellant relies to support his position.[6] *See* Appellant's brief at 15-16, 27-29, 38-39. In overruling *Butler I*, our Supreme Court engaged in a detailed balancing of

---

[6] As explained previously, in *Butler I* we held that the registration, notification, and counseling requirements imposed upon SVPs under SORNA amounted to punishment, thus requiring that SVP determinations apply the standard of beyond a reasonable doubt. *Butler I*, *supra* at 1216-1217.

the **Mendoza-Martinez**[7] factors. **Id**. at 988-993. This analysis led it to conclude that the registration, notification, and counseling requirements imposed upon sexually violent predators SVPs were not punitive under SORNA. **Id**. at 992-993. Since these additional requirements placed on SVPs were not punitive, SORNA's requirement that the trial court determine whether an offender is an SVP by a preponderance of the evidence remained constitutionally sound.[8] **Id**. at 993.

Second, our Supreme Court issued **H.R. II**, the result of the appeal of a prior order in this case. In **H.R. II**, our Supreme Court affirmed our decision that the Act 21 mechanism for determining whether an individual is a SVDC did not constitute criminal punishment. **See H.R. II**, **supra** at 335. After

---

[7] **Kennedy v. Mendoza-Martinez**, 372 U.S. 144 (1963). The **Mendoza-Martinez** factors are as follows: whether the statute involves an affirmative disability or restraint; (2) whether the sanction has been historically regarded as punishment; (3) whether the statute comes into play only on a finding of scienter; (4) whether the operation of the statute promotes the traditional aims of punishment; (5) whether the behavior to which the statute applies is already a crime; (6) whether there is an alternative purpose to which the statute may be rationally connected; and (7) whether the statute is excessive in relation to the alternative purpose assigned. **See Muniz**, **supra** at 1210-17.

[8] On February 21, 2018, following our Supreme Court's decisions in **Muniz** and **Butler I**, the Pennsylvania General Assembly amended SORNA. **See** Act of Feb. 21, 2018, P.L. 27, No. 10 (HB 631 of 2017; "Act 10"). Thereafter, our Governor signed new legislation striking the Act 10 amendments and reenacting several SORNA provisions. **See** Act of June 12, 2018, P.L. 140, No. 29 (HB 1952 of 2018; "Act 29"); **see also** 42 Pa.C.S. § 9799.51(b)(4) (explaining that the legislature amended SORNA in order to comply with **Muniz** and **Butler I**). Therefore, the **Butler II** Court reviewed the amended version of SORNA. **See Butler II**, **supra** at 981 n.11.

acknowledging the limited precedential value of **Muniz**, due to the heightened safety concerns and the irrelevance of the SORNA Subchapter H requirements in the SVDC context, the **H.R. II** court nonetheless applied the analytic structure of the **Butler II** Court. **Id**. at 330-31. Accordingly, the Court applied the **Mendoza-Martinez** factors to Act 21 in order to determine if it was punitive in intent or effect. **Id**. at 331-335. Ultimately, the Court determined that only the first factor weighed in favor of deeming Act 21 punitive, and all other factors balanced in favor of finding the statute non-punitive. **Id**. The High Court explained the reasoning behind its decision as follows:

> Despite the fact that Act 21 imposes obvious affirmative disabilities or restraints upon SVDCs, our review of the remaining **Mendoza-Martinez** factors leads to the conclusion [that] the statutory scheme is not punitive in intent or effect. Act 21 provides treatment to SVDCs rather than imposing restrictions that were historically considered punishment, and does not promote the typically punitive goals of deterrence and retribution. Furthermore, Act 21 protects the public from SVDCs, who have never been convicted of a crime, but are subject to the statutory restrictions because they are dangerously mentally ill. Lastly, Act 21, including the 2011 amendments, cannot be said to be excessive in light of the danger posed to the public by SVDCs. Based on all of the above, we conclude that Act 21 does not constitute criminal punishment.

**Id**. at 335. Next, the Court reasoned that because the challenged provisions of Act 21 do not constitute criminal punishment, Appellant's due process claim surrounding the burden of proof employed at SVDC hearings failed. **Id**. Thus, the statute's application of a clear and convincing evidentiary standard for imposing its requirements passes constitutional muster.

Here, Appellant again challenges the validity of his SVDC status on the constitutional grounds that Act 21's requirements constitute punishment necessitating that all relevant factual findings are made beyond a reasonable doubt. **See** Appellant's brief at 39. In light of the foregoing precedent, Appellant's claims fail. Our Supreme Court has spoken on this issue and its holding is fatal to Appellant's position. As our Supreme Court explained in **H.R. II**, Act 21 is not punitive. **See H.R. II**, **supra** at 335. Appellant has not offered any additional analysis to persuade us otherwise. Therefore, Appellant's constitutional challenges to Act 21 are meritless, and application of the statute does not violate Appellant's constitutional protections.

Appellant's final three issues concern the sufficiency of the evidence to support the trial court's order to extend his involuntary commitment. **See** Appellant's brief at 40-48. Thus, we will consider them together. As we do so, the following principles guide our review:

> We have explained that, at the [Act 21] hearing, it is the Commonwealth that bears the burden of showing by clear and convincing evidence that the person has a mental abnormality or personality disorder which results in serious difficulty in controlling sexually violent behavior that makes the person likely to engage in an act of sexual violence. If the Commonwealth meets this burden, the court is to enter an order committing the person to inpatient treatment for a period of one year. Our Supreme Court has defined clear and convincing evidence as testimony that is so clear, direct, weighty, and convincing as to enable the trier of fact to come to a clear conviction, without hesitation, of the truth of the precise facts in issue. Thus, the clear and convincing evidence test has been described as an intermediate test, which is more exacting than a preponderance of the evidence test, but less exacting than proof beyond a reasonable doubt. Moreover, in conducting a sufficiency review, we must consider the evidence in

the light most favorable to the Commonwealth which prevailed upon the issue at trial. With regard to sexually violent predator assessments, the task of the Superior Court is one of review, and not of weighing and assessing evidence in the first instance.

*In re S.T.S., Jr.*, 76 A.3d 24, 38-39 (Pa.Super. 2013) (citations and quotations omitted).

The juvenile court summarized Appellant's specific arguments, the relevant evidence, and its reasoning for concluding that Appellant's arguments must fail, as follows:

> Counsel for [Appellant] argues that the county failed to meet even the "clear and convincing evidence" burden enumerated at 42 Pa.C.S. § 6404(b)(2). [Appellant] further argues that the lack of any acts of sexual violence or substantial problem behaviors associated with two of his remaining diagnoses – frotteurism and exhibitionism – over the course of the past year at Torrance State Hospital indicates his ability to control his sexually violent behavior in an inpatient setting. Counsel for [Appellant] also cites his graduation from level 2.1 to 2.2 of the SRTP at Torrance as a sign of his growth and progress. However, as the counsel for the county notes, the fundamental purpose of the SRTP and other treatment programs is ostensibly to make progress.

> The court agrees with the county that the flush language of the statute calls for more than just incremental progress in order to release an individual from involuntary civil commitment under Act 21. While abstention from engaging in one or more identified problem behaviors for a period of one year is undoubtedly a good indicator of progress, it certainly does not eclipse other indications that an individual continues to have serious difficulty controlling sexually violent behavior due to a mental abnormality or personality disorder that makes the person likely to engage in an act of sexual violence. Indeed, as the Superior Court has recognized, "Act 21 does not require the court to find, by clear and convincing evidence, that a person has serious difficulty controlling sexually violent behavior *such that there is an "imminent risk"* that the person will reoffend if released. Instead, the plain language of the statute reveals that the Legislature's

- 10 -

intent to require only that the court find clear and convincing evidence that the person is *likely* to reoffend at some point in the future before recommitting them under section 6404(b)(2)." ***In re: J.M.***, 5 A.3d 323, 330 (Pa.Super. 2010) (emphasis added). Testimony at the annual review hearing provided ample evidence indicating that while H.R. appears to have progressed somewhat in his ability to control some of his sexually violent behaviors, he still struggles to control and cope with his sexually violent behaviors stemming from his disorders.

In support of its position, the county relies on both the 2018 SOAB assessment prepared by Dr. Valliere, and the facility assessment prepared by Dr. Barnes. Dr. Valliere testified that, over the last year, [Appellant] "continued to demonstrate symptoms related to his sexual dangerousness." (N.T., 12/12/18, at 7). Further, Dr. Valliere opined that [Appellant] continued to show problematic coping skills and self-regulation of emotional and sexual feelings and continued to exhibit aggressive thoughts associated with sexual arousal. She further testified that [Appellant] continued to report sexual fantasies directed at female staff members at his treatment facility and that he indicated an inability to self-manage these thoughts and urges. (***Id***. at 8). Ultimately, Dr. Valliere concluded that she believed "with a reasonable degree of psychological certainty that [Appellant] is not managing the symptoms of his mental abnormalities that make him sexually dangerous and still continues to meet the criteria for commitment under the law. (***Id***. at 15-16).

Trial Court Opinion, 1/8/19, 6-9 (unnecessary capitalization and footnotes omitted). Based on the summary of the evidence, which is supported by the record, the juvenile court found that the evidence was sufficient to justify the entry of the order to continue Appellant's commitment: "Without hesitation, the [c]ourt concludes that the risk of harm to the community is still too great at this point, and that the best interests of all parties are best served if [Appellant] remains civilly committed in involuntary inpatient treatment for the time being." ***Id***. at 9. We agree.

In challenging the court's determination, Appellant also avers that the court should not have placed so much weight on Dr. Valliere's opinion, since she had stale information generated by others and did not interview Appellant directly. *See* Appellant's brief at 46-47. Additionally, he argues that the court should not have considered Dr. Barnes' § 6404(b)(1) facility evaluation since she did not testify at the Act 21 review hearing. We find Appellant's arguments unconvincing.

The fact that Dr. Valliere based her conclusions on a review of Appellant's records and not personal observations or an independent evaluation of Appellant is inapposite. Appellant did not object to Dr. Valliere's admission as an expert, and it is well established that experts may base their opinions on data compiled by others. *See* N.T. Act 21 Review Hearing, 12/12/18, at 5. As Pa.R.E. 703 provides:

> An expert may base an opinion on facts or data in the case that the expert has been made aware of or personally observed. If experts in the particular field would reasonably rely on those kinds of facts or data in forming an opinion on the subject, they need not be admissible for the opinion to be admitted.

Pa.R.E. 703. Here in, Dr. Valliere properly based her assessment on her review of Appellant's history and records.

Further, Appellant has not provided any authority to support his allegation that Dr. Valliere was required to interview Appellant in order to complete her assessment. Importantly, the statutory authority governing these assessments does not mandate it:

The board shall conduct an assessment, which shall include the board's determination of whether or not the child is in need of commitment for involuntary treatment due to a mental abnormality as defined in section 6402 (relating to definitions) or a personality disorder, either of which results in serious difficulty in controlling sexually violent behavior. Upon the completion of the assessment pursuant to this section, the board shall provide the assessment to the court. In no case shall the board file the assessment later than 90 days after the child's 20th birthday unless notification of the board was delayed under subsection (b.1), in which case the assessment shall be filed no later than 180 days after the child's 20th birthday.

42 Pa.C.S. § 6358(c). Moreover, Dr. Valliere reviewed the § 6404(b)(1) facility assessment prepared by Dr. Barnes, and Dr. Barnes did interview Appellant. Since Appellant has not offered any explanation as to how the result would have been different had Dr. Valliere also interviewed Appellant this argument also must fail.

Next, Appellant attacks the inclusion of Dr. Barnes's § 6404(b)(1) facility assessment because she did not testify at the hearing. *See* Appellant's brief at 48. At the hearing, the county argued that the review was already part of the record pursuant to 42 Pa.C.S. § 6404(b). *See* N.T. Act 21 Review Hearing, 12/12/18, at 48. The trial court initially sustained Appellant's objection to the admission of Dr. Barnes's assessment and stated that the court would not rely on the assessment in reaching its decision. *Id*. at 49. Later, after reviewing the statutes governing Act 21 review hearing proceedings, the trial court reversed its ruling and agreed with the county, admitting the § 6404(b)(1) assessment because § 6404(b)(1) required the court to review it prior to the Act 21 hearing. *Id*. at 78.

The portion of the statute that the trial court relied on in reaching its conclusion states as follows:

(1) Sixty days prior to the expiration of the one-year commitment period, **the director of the facility or a designee shall submit an evaluation** and the board shall submit an assessment of the person to the court.

(2) The court shall schedule a review hearing which shall be conducted pursuant to section 6403(c) (relating to court-ordered involuntary treatment) and which shall be held no later than 30 days after receipt of both the evaluation and the assessment under paragraph (1). Notice of the review hearing shall be provided to the person, the attorney who represented the person at the previous hearing held pursuant to this subsection or section 6403, the district attorney and the county solicitor or a designee. The person and the person's attorney shall also be provided with written notice advising that the person has the right to counsel and that, if he cannot afford one, counsel shall be appointed for the person. If the court determines by clear and convincing evidence that the person continues to have serious difficulty controlling sexually violent behavior while committed for inpatient treatment due to a mental abnormality or personality disorder that makes the person likely to engage in an act of sexual violence, the court shall order an additional period of involuntary inpatient treatment of one year; otherwise, the court shall order the department, in consultation with the board, to develop an outpatient treatment plan for the person. The order shall be in writing and shall be consistent with the protection of the public safety and appropriate control, care and treatment of the person.

42 Pa.C.S. § 6404(b) (emphasis added). As § 6404(b)(1) requires both the submission of an evaluation by the director of the facility or designee, as well as the admittance of an SOAB assessment to the court and court review those submissions, we discern no error in the admission and consideration of Dr. Barnes's facility report. Since Dr. Barnes drafted the § 6404(b)(1) report, it was already part of the court's consideration before the review hearing.

- 14 -

Finally, viewing all of the properly admitted evidence in the light most favorable to the county, we find that the county established by clear and convincing evidence that Appellant has a mental abnormality or personality disorder that causes him serious difficulty controlling sexually violent behavior, such that involuntary civil commitment remains necessary. As previously noted, Dr. Valliere opined that Appellant has exhibitionistic disorder, frotteuristic disorder, and antisocial personality disorder. ***See*** N.T. Act 21 Review Hearing, 12/12/18 at 6. Appellant "spent the first half of the year struggling with adjusting to the treatment program, being oppositional, being aggressive, showing emotional dysregulation or instability." ***Id***. at 7. Dr. Valliere found most concerning the fact that Appellant

> continued to demonstrate symptoms related to his sexual dangerousness. He reported having erections when angry and erections in public, which obviously indicate sexual arousal to aggressive thoughts and sexual arousal to public areas, both specifically related to his disorders or exhibitionistic disorder, which is a nonconsenting display of genitals, erection, or masturbatory behavior to others, and frotteuristic disorder, which is nonconsensual touching of others. He has a history of sexually assaulting his treatment staff. And so the reports of his fantasies and objectification and sexual preoccupation with female staff at the center were very concerning and showed an inability to self-manage those things. He made threatening statements to staff and was fixated on those staff. Additionally, what is also an issue is that [Appellant] tends to rely on sexual soothing when he becomes upset or dysregulated. So he continues to show sexual preoccupation, which means he's not managing his sexual urges at all.

***Id***. at 7-8. Dr. Valliere explained that Appellant's persistent inability or unwillingness to manage his sexual urges and preoccupation made him

sexually dangerous, such that he should remain in inpatient treatment for another year. *Id*. at 15-16. While Dr. Valliere acknowledged that Appellant had made some minimal advancement since his initial admittance at Torrance, she did not believe that he had "achieved enough progress or goals to decrease his supervision and monitoring by staff." *Id*. at 13. Dr. Valliere's position found support in Appellant's testimony where he conceded that, while he was in consideration for advancing to level 2.3 in the program, discharge would not be appropriate until he achieved level five. *Id*. at 76. Based on this record, we conclude that the evidence was sufficient to establish the elements necessary to continue Appellant's involuntary commitment under Act 21.

Order affirmed.

Judge Shogan joins the memorandum.

Judge Strassburger concurs in result.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 7/24/20