In Re: Friends of Marconi Plaza,     :
Rich Cedrone and Joseph Q.         :
Mirarchi                          :
                             :     No. 1104 C.D. 2021
From a decision of:          :     Argued: June 23, 2022
The City of Philadelphia Board    :
of License and Inspection Review   :
                             :
Appeal of: City of Philadelphia     :

BEFORE:    HONORABLE MICHAEL H. WOJCIK, Judge
                HONORABLE CHRISTINE FIZZANO CANNON, Judge
                HONORABLE MARY HANNAH LEAVITT, Senior Judge

OPINION NOT REPORTED

MEMORANDUM OPINION
BY SENIOR JUDGE LEAVITT                FILED: December 9, 2022

The City of Philadelphia (City) appeals the October 8, 2021, order of the Court of Common Pleas of Philadelphia County (trial court) granting the Motion to Remove & Replace Plywood Structure Covering the Christopher Columbus Statue (Motion to Remove) filed by Friends of Marconi Plaza, Rich Cedrone, and Joseph Q. Mirarchi (collectively, Objectors). The trial court's order directed the City to remove a plywood structure encompassing the statue and authorized Objectors to erect a clear structure around the statue to protect it. We affirm in part and reverse in part.

This appeal concerns the statue of Christopher Columbus, now in Marconi Plaza, that was donated to the City in 1876 by the City's Italian-American community to commemorate the nation's centennial. On June 14, 2020, Objectors filed an Emergency Petition for Temporary Restraining Order to prevent the City

from removing the Christopher Columbus statue overnight, as it had done two weeks before with the statue of former Mayor Frank Rizzo. The trial court held an *ex parte* hearing, at which the City's Solicitor assured Objectors and the trial court that the statue would not be removed that night.

The following day, June 15, 2020, City Mayor James Kenney directed his Public Art Director to initiate the City Art Commission's process for receiving public input on the potential removal of the Columbus statue. That same day, the trial court held a hearing on Objectors' emergency petition at which Objectors raised concerns about the City's removal of the statue without allowing for public input and hearings. The parties entered into a Stipulation Agreement (Stipulation), in which the City pledged to follow the procedures that govern the removal of any work of public art, such as the Columbus statue.

The Stipulation authorized the City to take reasonable steps to protect the statue pending the outcome of the removal proceedings, including the construction of "a wooden box that encompass[ed] the entirety of the [s]tatue." Stipulation, ¶3; Reproduced Record at 38a (R.R. __). The Stipulation further stated that the parties would "negotiate in good faith" on a modification of "the boxing apparatus." Stipulation, ¶3; R.R. 38a. Notably, the Stipulation provided that the Art Commission would "determine the possible removal of the [statue] . . . through a public process as soon as practicable under the law." Stipulation, ¶1; R.R. 38a. On June 18, 2020, the trial court approved the Stipulation.

The issue of the statue's removal proceeded through the required administrative process, with hearings conducted by the City's Art Commission and Historical Commission. These proceedings culminated in a decision by the City's Board of License and Inspection Review (L&I Board) that allowed the City to

2

proceed with its plan to remove the statue. On October 6, 2020, Objectors appealed the L&I Board's September 29, 2020, decision. On August 17, 2021, the trial court entered an order reversing the decision of the L&I Board, for the stated reason that the City lacked "any legal basis" to remove the statue. Trial Court Op., 8/17/2021, at 5; R.R. 34a. The City appealed this decision to this Court. *See In re Appeal of: Friends of Marconi Plaza*, __ A.3d __ (Pa. Cmwlth., No. 938 C.D. 2021, filed December 9, 2022).

While the City's appeal was pending with this Court, Objectors filed the instant Motion to Remove, asserting that the plywood box around the statue constituted an "alteration" that had not been approved in accordance with the applicable provisions in the City's Home Rule Charter[1] and The Philadelphia Code.[2] *See* Supplemental Reproduced Record at 1b-24b (S.R.R. __). Because no protests had occurred at the statue in over a year, Objectors asserted the statue was not in danger of vandalism. Nevertheless, Objectors offered that "[t]he Grand Lodge of Pennsylvania Sons and Daughters of Italy remain[ed] committed to installing (and paying for all costs attendant to installation and maintenance) [of] a plexiglass-like covering so that the appearance of the statue remain[ed] unaltered, and it may be viewed by the public." S.R.R. 5b. Objectors sought an order directing the City to remove the plywood structure and allowing Objectors to construct "a plexiglass-like

---

[1] The City adopted its home rule charter on April 17, 1951, and it went into effect on January 7, 1952. *City of Philadelphia v. Schweiker*, 858 A.2d 75, 81 n.9 (Pa. 2004). Section 8-207(1) of the City's Home Rule Charter provides: "No work of art shall be . . . altered in any way without approval first obtained from the Art Commission." PHILADELPHIA HOME RULE CHARTER, §8-207(1). Additionally, Section 4-606(1)(e) provides, "The Art Commission shall . . . [a]pprove the . . . alteration of any existing work of art in the possession of the City[.]" PHILADELPHIA HOME RULE CHARTER, §4-606(1)(e).

[2] Section 14-1005(1) of The Philadelphia Code provides, "Unless a building permit is first obtained from [the L&I Board], no person shall alter or demolish a historic . . . object . . . ." PHILADELPHIA CODE §14-1005(1).

covering" to be erected around the statue during the pendency of the City's appeal. S.R.R. 6b.

On October 8, 2021, the trial court granted the Motion to Remove and directed the City to "remove [the] plywood structure covering the [statue] in Marconi Plaza forthwith." Trial Court Order, 10/8/2021, at 1; R.R. 1a. Further, the trial court authorized Objectors to "erect a clear structure encompassing the [s]tatue for protective purposes." Trial Court Order, 10/8/2021, at 1; R.R. 1a. That same day, the City appealed the trial court's order.

In its Statement of Errors Complained of on Appeal filed pursuant to Pennsylvania Rule of Appellate Procedure 1925(b), PA. R.A.P. 1925(b), the City argued that the trial court erred in granting the Motion to Remove because the City's appeal deprived the trial court of jurisdiction. Additionally, the City argued that Objectors did not establish the elements necessary for an injunction; the parties agreed to the installation of the boxing structure around the statue; and Objectors waived any challenge to the boxing of the statue because they did not raise the boxing matter in the various administrative proceedings conducted by the City.

In its Pennsylvania Rule of Appellate Procedure 1925(a) Opinion, the trial court stated that it had jurisdiction to enter its October 8, 2021, unboxing order under PA. R.A.P. 1701(b) and (c), which authorizes the trial court to maintain the *status quo* and resolve ancillary or collateral issues while an appeal is pending. The trial court explained that "prior to this initial legal dispute the [s]tatue sat peaceably, undisturbed, unhidden and exposed to public view within the confines of Marconi Plaza" since 1976, when the statue was moved there from Fairmount Park. Trial Court 1925(a) Op., 2/7/2022, at 10; R.R. 11a. "[T]he last actual, peaceable and lawful, non-contested status" of the statue was its placement in Marconi Plaza

4

unhidden by any plywood structure. Trial Court 1925(a) Op. at 10 (quoting *Miceli v. Unemployment Compensation Board of Review*, 549 A.2d 113, 116 (Pa. 1988)); R.R. 11a. Outside the Stipulation, which was mooted by the conclusion of the administrative proceedings, the City had no legal ground for keeping the plywood structure around the statue. Pennsylvania Rule of Appellate Procedure 1701(b)(1) empowered the trial court to maintain the *status quo* and to restore the statue to its last actual, peaceable status, *i.e.*, unboxed.

Additionally, the trial court explained that the plywood box was a matter ancillary or collateral to the pending appeal, *i.e.*, "an entirely separate and [] distinct legal claim." Trial Court 1925(a) Op. at 11; R.R. 12a. In its order of August 17, 2021, the trial court held that the City "lacked any legal basis" to proceed with removal of the statue. *Id.* The existence of the plywood structure was an issue not central to the issue of the removal of the statue but, rather, a peripheral issue.

The trial court rejected the City's contention that Objectors' Motion to Remove was a request for injunctive relief. Rather, Objectors raised a collateral issue not directly implicated in the City's pending appeal. Specifically, Objectors argued that the trial court's August 17, 2021, order "vitiated" the decision of the City's Historical Commission or Arts Commission, "leaving [the City] with no existing legal basis for the plywood structure." Trial Court 1925(a) Op. at 14; R.R. 15a. As such, the plywood structure constituted an illegal "alteration" effected without following the requirements of the Home Rule Charter and Philadelphia Code. The award of relief under Pennsylvania Rule of Appellate Procedure 1701(b) is not governed by the standards for a preliminary injunction.

The trial court also rejected the City's argument that Objectors were estopped from seeking removal of the plywood structure around the statue by the

5

Stipulation. The Stipulation did not indefinitely bind the parties to its terms, but only until the City's Art Commission made a decision.

Finally, the trial court rejected the City's argument that the court lacked jurisdiction by reason of the Local Agency Law, 2 Pa. C.S. §753(a).[3] The City argued that because Objectors did not raise the boxing of the Columbus statue in their challenge to the City's proposed removal of the statue from Marconi Plaza, the issue of the plywood box was waived. The trial court responded that had there been no initiation of the removal proceedings by the City, the plywood structure would not have been erected. It was not until the trial court entered the August 17, 2021, order on the ultimate status of the statue that the plywood structure became an issue ripe for review by the parties.

The City filed the instant appeal.[4]

---

[3] Section 753(a) of the Local Agency Law provides:

> A party who proceeded before a local agency under the terms of a particular statute, home rule charter, or local ordinance or resolution shall not be precluded from questioning the validity of the statute, home rule charter or local ordinance or resolution in the appeal, but if a full and complete record of the proceedings before the agency was made such party may not raise upon appeal any other question not raised before the agency (notwithstanding the fact that the agency may not be competent to resolve such question) unless allowed by the court upon *due cause shown*.

2 Pa. C.S. §753(a) (emphasis added).

[4] On October 9, 2021, Objectors filed an Emergency Motion to Enforce the Court Order or, in the Alternative, Modify the Automatic Supersedeas in the trial court, and the trial court granted the motion, modifying the automatic supersedeas to allow Objectors to immediately engage a contractor to take down the wooden box enclosing the statue. That same day, the City filed an Emergency Application to Reinstate Supersedeas in this Court, and this Court reinstated the automatic supersedeas and vacated the trial court's October 9, 2021, order.

## Appeal

On appeal,[5] the City raises three issues. First, it argues that the trial court lacked jurisdiction to enter the unboxing order under PA. R.A.P. 1701 because the trial court was divested of jurisdiction once the City filed its notice of appeal. Second, it argues that the trial court lacked the power to enter the unboxing order because Objectors were not entitled to equitable relief and did not preserve the challenge to the box in the underlying proceedings before the Historical Commission and L&I Board. Third, it argues that Objectors failed to meet their burden for a mandatory injunction to force the City to unbox the statue and to allow Objectors to construct a new, transparent covering for the statue. We address these issues seriately.

## I. Jurisdiction

In its first issue, the City argues that the trial court did not have jurisdiction to enter the unboxing order once the City appealed the trial court's order of August 17, 2021. Pennsylvania Rule of Appellate Procedure 1701(b)(1) authorizes a trial court to enter an order to preserve the *status quo*. The City argues that the unboxing order altered the *status quo*. The City argues that the plywood box was in place before the City submitted its application to the Art Commission for approval of the statue's removal from Marconi Plaza. Neither the removal of the plywood box nor the installation of the proposed plexiglass box describes the *status quo*. Citing our Supreme Court's decision in *PPM Atlantic Renewable v. Fayette*

---

[5] Questions of whether the trial court's post-trial order complies with PA. R.A.P. 1701 and whether the trial court had authority to enter its order, per the Local Agency Law, are pure questions of law subject to *de novo* review. *Commonwealth v. Cooper*, 27 A.3d 994, 998 (Pa. 2011). To the extent the City contends that the trial court's order provides Objectors with permanent injunctive relief, we note this Court's review is limited to determining whether the trial court committed an error of law. *Buffalo Township v. Jones*, 813 A.2d 659, 663-64 (Pa. 2002).

*County Zoning Hearing Board*, 81 A.3d 896, 901 (Pa. 2013), the City contends that the exceptions in PA. R.A.P. 1701(b)(1) are limited only to "housekeeping" matters. City Brief at 16. The trial court's unboxing order was not a housekeeping matter but rather "generated an entirely new issue in [the] case, to the detriment of the City's substantive property and First Amendment rights," U.S. Const. amend. I. *Id.* at 17. The plywood box was not part of the local agency hearing.

Pennsylvania Rule of Appellate Procedure 1701(b)(1) provides as follows:

> (b) *Authority of a trial court or other government unit after appeal.*--After an appeal is taken or review of a quasijudicial order is sought, the trial court or other government unit may:
>
> > (1) Take such action as may be necessary to preserve the *status quo*, correct formal errors in papers relating to the matter, cause the record to be transcribed, approved, filed, and transmitted, grant leave to appeal *in forma pauperis*, grant *supersedeas*, and take other action permitted or required by these rules or otherwise ancillary to the appeal or petition for review proceeding.

PA. R.A.P. 1701(b)(1). To preserve the *status quo*, the court may enter an order "auxiliary to the appellate process, such as a supersedeas or injunction."[6] *Lancaster County Agricultural Preserve Board v. Fryberger*, 257 A.3d 192, 201 (Pa. Cmwlth. 2021) (quoting PA. R.A.P. 1701, Official Note). Examples of auxiliary actions include an award of counsel fees or disposition of petitions for contempt and to lift a stay and resumption of discovery. *Samuel-Basset v. Kia Motors America, Inc.*, 34 A.3d 1, 49 (Pa. 2011) (petition for attorneys' fees ancillary to the appeal from the judgment on the merits); *Rosenberg v. Holy Redeemer Hospital*, 506 A.2d 408, 413-

---

[6] "[A] preliminary injunction is intended to preserve the *status quo* and prevent imminent and irreparable harm that might occur before the merits of the case can be heard and determined." *Lindeman v. Borough of Meyersdale*, 131 A.3d 145, 151 (Pa. Cmwlth. 2015).

14 (Pa. Super. 1986). Preservation of the *status quo* may include other kinds of relief. For example, in *In re H.R.*, 196 A.3d 1059 (Pa. Super. 2018), the Pennsylvania Superior Court affirmed a trial court's order to remove the appellant from the sex offender registry while he appealed the court's order committing him to involuntary treatment as a sexually violent delinquent. The Superior Court agreed that the trial court's order preserved the *status quo* as it existed before the appeal of the commitment order. *Id*. at 1061 n.1. *See also* 20A WEST'S PENNSYLVANIA PRACTICE, APPELLATE PRACTICE §1701:15 (December 2021-2022 ed.) (examples of 1701(b) actions necessary to preserve the *status quo* include the issuance of a "stay or supersedeas or an injunction pending appeal, *or similar relief*" (emphasis added)). The *status quo* is defined as "the last actual, peaceable and lawful, non-contested status which preceded the controversy." *Miceli*, 549 A.2d at 116.

Here, the Columbus statue sat "unhidden and exposed to public view within the confines of Marconi Plaza" since 1976. Trial Court 1925(a) Op. at 10; R.R. 11a. In June of 2020, competing protests took place at Marconi Plaza. On June 18, 2020, the parties entered into a Stipulation allowing the City to "reasonably protect the [s]tatue pending a decision by the Art Commission." Stipulation, ¶3; R.R. 38a. The Stipulation provided the City the legal basis for the construction of a plywood structure around the statue while the statue's removal went through the public comment and public hearing processes. We agree with the trial court that the "last [] peaceable and lawful" condition of the statue, prior to the controversy, was "unhidden and exposed to public view[.]" Trial Court 1925(a) Op. at 10; R.R. 11a.

We are unpersuaded by the City's argument that the order was not collateral because it was more than a mere "housekeeping matter." The City's reliance upon *PPM Atlantic Renewable* is misplaced. That case involved a condition

9

imposed on the appellant in the form of a bond. Here, the trial court's order placed no condition on the City's appeal. In any case, the trial court's order may be viewed as necessary "housekeeping" because it clarified the state of affairs after the trial court reversed the adjudication of the L&I Board.

In sum, the trial court's order returned the statue to the condition in which it existed since 1876 in Fairmount Park and since 1976 in Marconi Plaza. It is similar to the Superior Court's grant of a motion to remove an appellant from the sex offender registry during his appeal of a separate, but related, matter. *See In re H.R.*, 196 A.3d at 1061 n.1. Pennsylvania Rule of Appellate Procedure 1701 provided the trial court with the requisite authority to restore the *status quo*, and its order had no impact on the City's appeal of the trial court's order. We reject the City's contention that the trial court lacked jurisdiction to order the unboxing of the statue.

## II. Local Agency Law

We next consider the City's argument that the trial court's order constituted a mandatory injunction that is not permissible in a local agency appeal. City Brief at 18. The City argues that the trial court's review was limited to affirming or reversing the L&I Board, and it had no power to review the boxing of the statue. That issue was never raised before the L&I Board. In other words, the trial court could not devise an equitable remedy that was beyond the power of the L&I Board to order.

In the absence of an adequate remedy at law, a party may bring an action in equity in a court of common pleas. *Martino v. Transport Workers' Union of Philadelphia, Local 234*, 480 A.2d 242, 244-45 (Pa. 1984). Equitable remedies

10

require the lack of an adequate remedy at law. *Barcia v. Fenlon*, 37 A.3d 1, 5-6 (Pa. Cmwlth. 2012).

The City's Historical Preservation Ordinance governs alterations[7] to public works of art, including "historic objects," such as the Columbus statue. The ordinance provides that "*no person shall alter* or demolish *a historic* building, structure, site, or *object*," without first obtaining a building permit from the L&I Board. PHILADELPHIA CODE, §14-1005(1) (emphasis added). Before a building permit can be issued, the building application must be forwarded to the Historical Commission for its review. PHILADELPHIA CODE, §14-1005(2). The City's governing legislation, however, does not address unboxing statues, only their alteration and removal.

Further, the City has a published policy on the removal of public works of art. Relevant here, the City may remove a public work of art when:

> 5. The artwork endangers the public safety.
>
> 6. The condition or the security of an artwork cannot be reasonably guaranteed.
>
> 7. Upon receiving significant and continuing protests against a public work of art, the then Mayor, acting as the Chief Executive Officer of the City, determines that it is in the best interest of the City to implement the procedures in this policy for the removal of the public art then under protest.

MANAGING DIRECTOR'S DIRECTIVE 67 (DIRECTIVE 67), §B(II)(5)-(7) (issued November 6, 2018).

---

[7] The Philadelphia Code defines "alter or alteration" as "a change in the appearance of a building, structure, site or object which is not otherwise covered by the definition of demolition, or any other change for which a permit is required under The Philadelphia Code." PHILADELPHIA CODE §14-203(15).

The City contends that a court of common pleas, when reviewing a local agency appeal, lacks the power to order equitable relief. We reject the City's premise that the trial court ordered equitable relief. The parties agreed to the boxing of the statue during the pendency of the administrative proceedings, as memorialized in the court-approved Stipulation. Once the administrative proceedings had concluded, the City lacked any legal basis for the statue's boxing.

Alternatively, the City argues that even if the trial court could award injunctive relief ancillary to a local agency appeal, it could not do so here. Objectors waived a challenge to the plywood box by not raising it in the underlying agency proceedings.

We disagree. There was no obligation to raise the boxing in the underlying agency proceedings. The boxing was allowed only by the Stipulation approved by the trial court and covered the duration of the pending administrative proceeding. Indeed, the L&I Board lacked the authority to address the boxing of the statue, which was a matter governed by the Stipulation filed with the trial court.

We conclude that the trial court's order to unbox the statue was not barred by the Local Agency Law. The order returned the parties to the *status quo* and required the City to comply with the Stipulation, matters committed solely to the jurisdiction of the trial court.

### III. Injunction

Lastly, the City argues that Objectors' Motion to Remove is, in actuality, a petition for a permanent injunction. The City contends that Objectors cannot show a legal right to compel the City to uncover its own property, and, further, the plywood box does not alter the statue as the term is defined in The Philadelphia Code because it merely shields the statue from view. The City argues

12

that its Historical Preservation Ordinance does not mandate that every historic object be visible to the public. The trial court's order to unbox the statue "represents a grave intrusion on [its] property rights and its rights against compelled speech" and "would compel the City to display a [s]tatue it does not wish to display[] and convey a message that it does not endorse." City Brief at 27-28. The City also argues that Objectors have no legal right to construct their own plexiglass structure around the statue.

In the Stipulation, the City agreed to take reasonable steps to protect the Columbus statue, such as constructing a wooden box to enclose it, pending the outcome of the removal proceedings. Stipulation, ¶3; R.R. 38a. Once the administrative proceedings concluded, the City lost the authority to keep the wooden box around the statue. Further, a permanent wooden box encompassing the statue is an alteration to that public work of art. The City's ordinance and Directive 67 address alterations of public works of art. PHILADELPHIA CODE, §14-1005; DIRECTIVE 67, §B. At a minimum, the City needed a building permit to alter the Columbus statue by keeping it surrounded by a wooden box.

As for the City's asserted constitutional property and free speech rights, we are not convinced that the trial court's order interferes with any of these rights. The City's Home Rule Charter, Historical Preservation Ordinance, and Directive 67 have established procedures that the City must follow before altering or removing any public work of art. The City is bound by its ordinance, charter and Directive 67. The City cannot ignore its own mandates by asserting the City's constitutional claims.

The City contends that the trial court's order compels the City to display a statue it does not wish to display and "to convey a message that it does not

13

endorse." City Brief at 28. The City's objection to the "message" is somewhat opaque. The statue's iconography commemorates Columbus's sailing achievement with an anchor, a globe on which his hand rests and a chart in the other hand. The pedestal commemorates the country's centennial and the Italian-American community in the City. To the extent the City considers the "message" incomplete, it can complete the message with its own plaque more in line with the message the City wishes to convey.

More to the point, the City accepted the donation of the Columbus statue in 1876. It has a fiduciary duty to preserve that statue, which it designated an historic object in 2017. The Columbus statue is not City property as is, for example, a City snowblower. Whether the City agrees with the "message" is simply irrelevant to its fiduciary duty to preserve and maintain public works of art that have been designated historic objects.

The trial court had the authority to order the unboxing of the statue. However, we hold otherwise with respect to the construction of a plexiglass box. The statue has never been surrounded by a clear structure, and private parties, such as Objectors, lack authority to make changes to the City's public art without the City's approval. Even then, the City needs to go through the procedures necessary for an alteration. Because the City's ordinances and directives do not provide a process for the temporary protection of a public work of art, Objectors needed to seek an injunction to allow the erection of a clear structure around the statue, if that was their desire.

**Conclusion**

Objectors' Motion to Remove sought to preserve the *status quo* and compliance with the terms of the parties' Stipulation while the City appealed the trial

14

court's order of August 17, 2021. This Court has now addressed the merits of the City's underlying appeal in *In re: Appeal of Friends of Marconi Plaza*, __ A.3d at __, slip op. at __, and affirmed the trial court's order prohibiting removal of the Columbus statue from Marconi Plaza. In so holding, we stated that the City failed to allow the requisite time period for public input required by Directive 67. Under this holding, any alteration or removal of the statue must comply with the process required by the City's ordinance and management directive.

Accordingly, we affirm the trial court's order in part and reverse it in part. The trial court's order is affirmed to the extent it orders the removal of the plywood box surrounding the statue, but its order is reversed to the extent it authorizes Objectors to construct a plexiglass box around the statue.

_____
MARY HANNAH LEAVITT, President Judge Emerita

Judge Wojcik dissents.

Judge Ceisler and Judge Dumas did not participate in the decision of this case.

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

In Re:  Friends of Marconi Plaza, :
Rich Cedrone and Joseph Q. :
Mirarchi :
 : No. 1104 C.D. 2021
From a decision of: :
The City of Philadelphia Board :
of License and Inspection Review :
 :
Appeal of:  City of Philadelphia :

# **O R D E R**

AND NOW, this 9th day of December, 2022, the October 8, 2021, order of the Court of Common Pleas of Philadelphia County is AFFIRMED in part and REVERSED in part.  Specifically, the order is affirmed insofar as it directs the City of Philadelphia to remove the plywood structure covering the Christopher Columbus statue in Marconi Plaza, and the order is reversed insofar as it authorizes the construction of a clear structure to enclose the Christopher Columbus statue in Marconi Plaza.

_____
MARY HANNAH LEAVITT, President Judge Emerita